UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RESOLUTION INCORPORATED OF DELAWARE | CIVIL ACTION |
| VERSUS | NO. 11-2475 |
| MEDICAL BRIDGES, INC. | SECTION "F" |

ORDER AND REASONS

Before the Court is the defendant's motion to dismiss for personal jurisdiction, or, in the alternative, failure to state a claim upon which relief can be granted. For the reasons that follow, the motion is GRANTED.

Background

This dispute arises out of a contract for the shipment of goods.

Plaintiff, Resolution Incorporated of Delaware, is a corporation that provides shipping services as a non-vessel owning common carrier ("NVOCC"). An NVOCC is an intermediary between the shipper of goods and the operator of a vessel that will ultimately carry the goods. Plaintiff usually coordinates shipments by contracting with other NVOCCs, marine carriers, and vessel owners. The majority of goods plaintiff handles are for humanitarian purposes. Plaintiff is authorized to do business in Louisiana, maintains an office in New Orleans, and primarily operates under the trade names "Missionary Expediters" and "Navigation Network."

1

Defendant, Medical Bridges, Inc., is a nonprofit organization that recovers surplus medical supplies and equipment from the Houston area and donates them to health care providers in foreign countries.  If the receiving health care provider is unable to pay for shipping from Medical Bridges' warehouse in Houston to its clinic location, Medical Bridges helps locate a shipping sponsor.  Medical Bridges is organized in Texas with its principal place of business in Houston, Texas.  Medical Bridges has never maintained an authorized agent for service of process in Louisiana, is not authorized or licensed to conduct business in Louisiana, and has no bank account or telephone listing in Louisiana.  The company also does not employ or pay taxes in Louisiana.  Medical Bridges also claims not to place or direct any advertisements toward Louisiana.  The record does not contradict this claim.

In April 2008, the defendant received a request for supplies from Santo Yusup Hospital in Bandung, Indonesia.  This request was submitted by the hospital's United States fundraising committee, Aku Sinta Indonesia-Houston Committee.  The defendant donated the supplies and contracted with the plaintiff to arrange for the movement of medical supplies to Indonesia.  Plaintiff contracted with World Cargo Transport to be the NVOCC for the Indonesia shipment.  World Cargo in turn contracted with CMA-CGM to act as the ocean carrier.  Two bills of lading and one waybill

were subsequently issued for the Indonesia shipment: the plaintiff's Navigation Network bill of lading, the World Cargo bill of lading, and the CMA-CGM waybill.

Using the trade name Navigation Network, plaintiff issued a bill of lading designating (1) Aku Sinta Indonesia-Houston Committee as the shipper/exporter of the medical supplies, (2) Santo Yusup Hospital as the consignee of the suppliers, and (3) plaintiff as the forwarding agents.

World Cargo then issued a bill of lading designating (1) plaintiff as the shipper, (2) Santo Yusup Hospital as the consignee, and (3) plaintiff as the forwarding agent.

The ocean carrier, CMA-CGM, issued a waybill designating (1) World Cargo as the shipper and (2) Santo Yusup Hospital as the consignee.

When the shipment arrived in Jakarta, Indonesia, it remained unclaimed. The container was not released by customs, retrieved by the consignee (Santo Yusup Hospital), or stripped by CMA-CGM. The container remained idle and CMA-CGM made a claim for demurrage/detention charges against World Cargo. World Cargo then made demand upon plaintiff for indemnity for its liability to the carrier. In turn, the plaintiff made demand upon defendant for indemnity, but to no avail. Ultimately, World Cargo paid $10,248 to CMA-CGM. The plaintiff paid World Cargo for the entire amount paid by World Cargo to CMA-CGM.

Plaintiff sued defendant in this Court on October 31, 2011, pursuant to Rule 9(h) of the Federal Rules of Civil Procedure. Plaintiff alleges that the defendant violated its obligations under the bill of lading, tariff, and shipping documents. The plaintiff asks the Court for a judgment in its favor for $10,248, in addition to interest, costs, and attorney fees. The defendant now seeks to dismiss the plaintiff's claim for lack of personal jurisdiction, or, alternatively, for failure to state claim.

## Personal Jurisdiction Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to present by motion a defense that the Court lacks personal jurisdiction over it.

When a nonresident like the defendant moves to dismiss for lack of personal jurisdiction, the plaintiff seeking to invoke the jurisdiction of this Court bears the burden of establishing it. See Luv N' Care v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006). The plaintiff may meet its burden by presenting a prima facie case for personal jurisdiction where, as here, the Court decides the matter without an evidentiary hearing. Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994). The Court will take all uncontroverted allegations in the complaint as true and resolve any conflicts in the plaintiff's favor. Id. The Court is not restricted to pleadings, but may consider affidavits, interrogatories, depositions, or any other appropriate method of

discovery.  Id.; see Jobe v. ATR Mktg., Inc., 87 F.3d 751, 752 (5th Cir. 1996).

The Court may exercise personal jurisdiction over a nonresident defendant only if two requirements are satisfied: (1) the forum state's long-arm statute confers personal jurisdiction; and (2) the exercise of jurisdiction does not exceed the boundaries of Due Process.  See Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 270 (5th Cir. 2006). Because the limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process, the inquiry is simply whether this Court's exercise of jurisdiction over the defendant would offend due process.  See LA. REV. STAT. ANN. § 13:3201(B); Luv N' Care, 438 F.3d at 469; see also Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999).

The Due Process Clause limits the Court's power to assert personal jurisdiction over a nonresident defendant.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1994).  That is, a nonresident defendant must have meaningful minimum "contacts, ties, or relations" with the forum state in order for jurisdiction to be constitutional.  See Luv N' Care, 438 F.3d at 469 (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 319 (1945)).  The minimum contacts analysis asks whether the nonresident defendant purposefully availed himself of the

5

benefits and protections of the forum. Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994).

The minimum contacts test takes two forms, and the constitutional limitations on the exercise of personal jurisdiction differ depending on whether a court seeks to exercise general or specific jurisdiction over the defendant. Specific jurisdiction exists if the plaintiff shows that the defendant has purposely directed its activities toward the forum state and that its cause of action arises out of or results from the defendant's forum-related contacts. Luv N' Care, 438 F.3d at 469 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) and Nuovo Pignone v. STORMAN ASIA M/V, 310 F.3d 374 (5th Cir. 2002)). Once the plaintiff makes this preliminary showing, personal jurisdiction will lie so long as maintaining the suit will not "offend traditional notions of fair play and substantial justice." Id. General jurisdiction, on the other hand, exists where contacts between the defendant and the forum state have been continuous and systematic to such an extent that the exercise of personal jurisdiction is justified. Dickson Marine, Inc. v. Panalina, Inc., 179 F.3d 331, 339 (5th Cir. 1999).

## I. Discussion

Defendant submits that it lacks the minimum contacts necessary for this Court to exercise personal jurisdiction over them. The Court agrees.

*A.*

The plaintiff argues that the Court has specific personal jurisdiction over the defendant because the defendant purposely directed its activities at the forum state by contracting with the plaintiff in Louisiana, and the cause of action arises out of that business transaction. It is well established within the Fifth Circuit that merely contracting with a resident of the forum state is not in itself sufficient to establish minimum contacts. See, e.g., Burger King, 471 U.S. at 476; Brammer Eng'g, Inc. v. E. Wright Mountain Ltd. P'ship, 307 F. App'x 845, 847-48 (5th Cir. 2009); Recetec, LLC v. Allied Erecting & Dismantling Co., No. 07-7126, 2008 WL 2067031, at *3 (E.D. La. May 14, 2008). Therefore, the fact that the defendant has a contract with a Louisiana company is not dispositive of personal jurisdiction. Courts consider the parties' prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing. See Burger King, 471 U.S. at 479.

Defendant hired the plaintiff for the purpose of transporting the medical supplies from the defendant's warehouse in Houston, Texas to Jakarta, Indonesia. All negotiations of the shipping documents occurred over the internet, phone, or fax. The e-mail communication between the plaintiff and defendant indicates that the plaintiff's task of arranging shipment was

7

always centered on retrieving the supplies from Texas. The medical supplies and ocean carrier never passed through Louisiana or any port within. There appears little contact by the defendant with the forum state other than the defendant's e-mails and payments, which are insufficient to constitute minimum contacts. See McFadin v. Gerber, 587 F.3d 753, 760 (5th Cir. 2009) ("[C]ommunications relating to the performance of a contract themselves are insufficient to establish minimum contacts."); Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327, 344 (5th Cir. 2004) ("[The Fifth Circuit] has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish minimum contacts.").

The fortuity of the plaintiff's residence in Louisiana is insufficient to support a finding of specific personal jurisdiction over the defendant when the plaintiff has failed to carry its burden of establishing that the plaintiff's claim arises out of the plaintiff's mere presence in Louisiana.

*B.*

The plaintiff points to one other related contact that the defendant had with Louisiana, presumably in an attempt to support an argument for the Court's exercise of general jurisdiction.

Earlier in 2008, the defendant contracted with the plaintiff to ship goods from Houston, Texas to San Antonio, Chile.  The plaintiff argues that this Chilean transaction, in conjunction with the Indonesian transaction, make it "foreseeable" that the defendant would be haled into court in Louisiana and therefore minimum contacts exist.  The argument is a stretch, and the cases plaintiff cites as support for its general jurisdiction argument are distinguishable.

In Exposition Partner, LLP v. King LeBlanc & Bland, LLP, an organization was formed in Louisiana by Texas and Louisiana residents.  869 So. 2d 934, 44 (La. App. 2 Cir. 3/10/04).  Among other things, fifty percent of the company's ownership was based in Louisiana and a registered office was kept in Louisiana.  See id.  In this case the defendant has no offices, bank accounts, property, employees, phone numbers, mailing addresses, or registered agents in Louisiana.  It is not licensed or qualified to conduct business in Louisiana.  It does not advertise in Louisiana or target residents of the state.  The second case the plaintiff cites is also unhelpful.  The plaintiff in Greenway Leasing, L.P. v. Star Buffet Mgmt., Inc. sued a wholly-owned subsidiary and its parent company.  57 So. 3d 397, 400 (La. App. 2 Cir. 1/26/11).  The court there held that minimum contacts existed over the parent company because the parent company made frequent visits to Louisiana and began the process to legally

acquire the subsidiary in bankruptcy proceedings.  <u>See</u> <u>id.</u>  No such contacts exist in the case here.

Although a contract was entered into with a Louisiana firm, the defendant did not purposefully avail itself of the privilege of conducting activities in Louisiana.  Accordingly, the defendant's motion to dismiss for lack of personal jurisdiction is GRANTED.

New Orleans, Louisiana, September 12, 2012

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE